UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                               :

CENTURY PULP & PAPER,              :
                    Plaintiff,    :

                               :        11 Civ. 04722 (LGS)
          -against-          :
                               :        ORDER & OPINION
M/V "MSCD AMLA" et al,         :
                  Defendants.  :
                               :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Century Pulp & Paper ("Century") brings this case in an effort to recover losses it

suffered when the Defendant ship, the MSC Damla, operated by Defendant MSC Mediterranean

Shipping Co., S.A. ("MSC") and owned by Defendant Detour Holdings, Inc. ("Detour"), delivered

just four percent of the wood pulp Century was expecting to receive.  Before the Court are the

parties' cross-motions for summary judgment.  The Plaintiff's motion is as to liability only.  For

the reasons stated below, both motions are denied.

**I.  Background**

       There are three actors in this dispute, and the malevolent actor is notably absent from

these proceedings.  Plaintiff Century, located in Mumbai, India, manufactures paper products and

was the buyer in the underlying transaction.  Defendant MSC is an ocean carrier of cargo and has

a local agent in New York.  MSC operated the MSC Damla, which is owned by Detour.  Non-

party Certifibre LLC ("Certifibre") was an Illinois dealer in wood products and was the seller in the

underlying transaction.

       In 2009, Century contracted to buy 500 air-dried metric tons of softwood pulp from

Certifibre, which were to be packed in 20 ocean containers.  Certifibre booked with MSC to ship

the pulp from the Port of Charleston, South Carolina.  Instead of loading the containers with 2,080 bales of pulp as contracted, Certifibre loaded only a total of 78 bales.

Certifibre delivered the 20 containers to MSC for shipping.  No one from Century inspected the containers as they were loaded, locked and sealed.  MSC issued its bill of lading for carriage from the United States to India.  The South Carolina State Ports Authority had weighed the containers before loading and issued receipts to MSC.  The receipts reflected that the containers weighed about 40,000 pounds less per container than the weights listed on the MSC bill of lading.

Nineteen of the twenty containers remained sealed the entire route.  The twentieth was found to be unlocked and resealed at an intermediary port.  After the incident, MSC reported to Certifibre that the container was significantly shortloaded.

Certifibre presented the bill of lading along with other required documents to the State Bank of India, which paid Certifibre $325,000 on a letter of credit opened by Century to pay for the pulp.  When the twenty containers arrived in India, Century discovered that Certifibre had shortloaded the containers.  It is undisputed that MSC delivered all of the cargo it had received in Charleston, and that Certifibre had defrauded Century.  Certifibre is now defunct, and Century is unable to collect from Certifibre.  The issue here is, as between two innocent parties, the shipper and the buyer, who should bear the loss.

The parties agree that the bill of lading issued by MSC overstates the container weight by about 40,000 pounds per container, and that MSC had information that the containers were shortloaded but did not notify Century.  The parties disagree, however, regarding the determinative issue under applicable law -- whether Century relied on the incorrect bill of lading issued by MSC.  The question is whether the seller could have collected payment, or whether the

buyer could have enjoined payment, on the letter of credit if the shipper's bill of lading had accurately stated the weight shipped.

Century contends that it relied on the statement of the weight in the bill of lading because Certifibre would not have been able to draw on the letter of credit had the bill of lading accurately stated the cargo's weight.  This argument raises a question of law about the terms of the letter of credit agreement, which is discussed below.  Century also contends that it received and reviewed a copy of the bill of lading before Certifibre drew on the letter of credit, and that if the weight had been accurately stated on the bill of lading, it would have sought to enjoin payment.  Century relies on the testimony of Rajeev Mathur to support its contention that it received and reviewed the bill of lading.  Mr. Mathur testified that it was Century's pattern and practice that someone at Century would have reviewed the bill of lading before payment.  Mr. Mathur testified that Century received a copy of the bill of lading on December 29, 2009, when the State Bank of India sent communications noting discrepancies between the bill of lading and the terms of the letter of credit.  However, the email in the record, dated December 30, 2009, contradicts Mr. Mathur in that it does not attach the bill of lading, but instead attaches a list of discrepancies between the bill of lading and the language required by the letter of credit.  Century waived the discrepancies, and on January 13, 2010, Certifibre drew on the letter of credit.

## II.  Legal Standard

Summary judgment is appropriate only where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *In re "Agent Orange"*

*Prod. Liab. Litig.,* 517 F.3d 76, 87 (2d Cir. 2008).  A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party.  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178-79 (2d Cir. 2008).  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The non-moving party may not rely on "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).  It cannot rely on mere denials or unsupported alternative explanations of its conduct.  *See S.E.C. v. Grotto,* No. 05 Civ. 5880, 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. Discussion

## A. Plaintiff's Prima Facie Case

This case is governed by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300-1315 (1976).  Under COGSA, a consignee, in this case Century, the buyer, establishes a prima facie case for recovery from a carrier by proving (1) delivery of the goods to the carrier in good condition and (2) "outturn" by the carrier in damaged condition.  *Westway Coffee Corp. v. M. V. Netuno*, 675 F.2d 30, 32 (2d Cir. 1982).  "When the consignee proves its prima facie case, the burden shifts to the carrier to show that the loss or damage falls within one of the COGSA exceptions set forth in 46 U.S.C. § 1304(2) (1976).  *Id.*

The first question is whether Century has shown the first prong for establishing a prima facie case—that the goods were received by the carrier in good condition.  In this case, Century needs to prove that the proper amount of pulp it ordered was delivered to MSC.  Under COGSA,

the bill of lading issued by MSC constitutes prima facie evidence that pulp weighing the amount indicated on the bill of lading was received by MSC from the seller, Certifibre. *Westway Coffee Corp.* 675 F.2d at 32. "It has long been established that the weight listed on a bill of lading is prima facie proof of receipt by the carrier of that weight regardless of attempted reservations like 'said to weigh,' 'shipper's load and count,' and 'contents of packages are shipper's declaration.'" *Id.* A clean bill of lading attesting to the order and condition of goods does *not* constitute a prima facie case that the goods were received in good condition absent a showing that the external observer could have recognized the conditions. *Id.* "[T]here is no similar limitation in COGSA regarding the recording of *weights* in bills of lading." *Id.* at 33 (emphasis added). Once the carrier lists the weight of the goods, which the carrier normally will know and is easily verifiable, the carrier represents that it has no reasonable ground for suspecting that the weight of the goods actually received varies from the listed weight. *See id.*; s*ee also* 46 U.S.C. § 1303(3)(c) (1976).

The carrier here, MSC, issued a bill of lading declaring a weight that was significantly higher than the actual weight of the cargo. Thus, as a matter of law, Plaintiff has satisfied the first prong of its prima facie case–that MSC received goods weighing the amount stated on the bill of lading (even though the evidence is undisputed that this was factually not so). There is no dispute as to the second prong of the prima facie case–that MSC delivered goods weighing substantially less than stated on the bill of lading.

## B. Defendants' Burden and the Doctrine of Estoppel

"When the consignee proves its *prima facie* case, the burden shifts to the carrier" to show that one of COGSA's exceptions apply. *Bally, Inc. v. M.V. Zim Am.*, 22 F.3d 65, 69 (2d Cir. 1994); *see also Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2d Cir. 1981). The contrast with *Westway*, *supra*, is informative. *Westway*, like this case, involved a carrier that delivered an

amount of cargo (coffee) that was less than the weight listed on the bill of lading.  When the carrier could not adduce evidence to rebut the presumption that it had received the cargo with the weight stated on the bill of lading, the Court held that "it was not error for the District Court to find that [the consignee] had proved the weight of the containers on receipt by [the carrier] to be 76,708 kilos." *Westway Coffee Corp.*, 675 F.2d at 33.  In a footnote, the court stated, "We need not decide whether [the carrier] is in any event estopped from offering evidence to rebut the prima facie showing of receipt of the listed weight, established by the bill of lading . . ." *Id.* at n.3. Here, the Court must address both issues–whether the carrier has evidence to rebut the presumption that it received the cargo as stated on the bill of lading, and if so, whether it is estopped from offering the evidence.  *See, e.g., Berisford Metals Corp. v. S/S Salvador*, 779 F.2d 841 (2d Cir. 1985); *Portland Fish Co. v. States Steamship Co.,* 510 F.2d 628, 632-633 (9th Cir. 1974).

Defendants here have more than sufficient evidence to rebut Plaintiff's prima facie showing that the goods arrived on board the ship weighing the full amount stated on the bill of lading.  Indeed, Plaintiff admits that the shipper Certifibre shortloaded the ship.

The next issue is estoppel.  If the buyer, Century, paid the seller while relying on the representations contained in a false bill of lading, then Defendants will be estopped from presenting evidence in their defense.  In *The Carso*, Judge Augustus Hand described the doctrine of estoppel in a context similar to this one, where a plaintiff had admitted that there was evidence the defendant carrier had not caused the damage:

> It may be argued that estoppel is only a rule of evidence and has no bearing in a situation where the libelants have themselves shown that the goods were damaged before shipment.  But such a doctrine would ordinarily deprive a consignee who had advanced money on a clean bill of lading of a right of action on the document.  In cases where he learned only after he had advanced his money that the goods were shipped in bad order he could never make even a prima facie case without proving the true facts and thus showing that the recitals

in the bill of lading were false.  An estoppel is not a mere rule of evidence, but is in effect a rule of law whereby facts in favor of one party which the other party is estopped to deny are absolutely established.

. . . An estoppel is in effect a conclusive admission of a non-existent fact. This supposed fact may be essential either for a cause of action, for a defense, or for a replication. . . .

An estoppel then may be, and frequently is, either the sole or the main foundation of a cause of action.

*The Carso*, 53 F. 2d 374, 377-78 (2d Cir. 1931); *see also Berisford Metals*, 779 F.2d at 846.

In order for the estoppel doctrine to apply, the party urging estoppel must be the purchaser of the bills of lading, the party must have relied on representations contained in the bills of lading in making its purchase, and the cargo carried under the bills of lading must have arrived in a condition that did not conform with representations made in the bills of lading. "The doctrine does not apply in a suit by a shipper against a carrier, or where reliance on the description by a holder for value is not reasonable, or where the holder does not rely on the description at all."

*Raphaely Int'l, Inc. v. Waterman S.S. Corp.*, 764 F. Supp. 47, 50 (S.D.N.Y. 1991) (applying estoppel in dispute governed by COGSA) (*citing Portland Fish Co.*, 510 F.2d at 633).  In this case, the Court must analyze whether or not Century relied on the bill of lading in making payment.

## C.  Plaintiff's Reliance on the Bill of Lading

Century has established its prima facie case for liability against Defendants, which Defendants have evidence to rebut if they are not estopped from doing so.  If Century can prove it detrimentally relied on the bill of lading, then Defendants will not be permitted to rebut Century's prima facie case.  Century argues that it relied on the weight stated in the bill of lading in two ways.  First, the letter of credit makes reference to the terms of the purchase order between Century and Certifibre, which indicated the weight of pulp that Certifibre was to deliver to Century.  Century contends that if the bill of lading had listed a weight different from that

required in the purchase order, the State Bank of India would not have made payment under the letter of credit.

Second, Century argues that it received a copy of the bill of lading before Certifibre drew on the letter of credit, and had MSC correctly listed the weight of the goods on the ship, Century would have attempted to enjoin Certifibre from collecting on the letter of credit.  Third, and unrelated to the bill of lading, Century argues that because MSC knew of the shortloading, Defendants should be estopped from presenting evidence in their defense because MSC should have informed Century of the shortloading.

### i.  Century Did Not Rely on the Bill of Lading When the State Bank of India Made Payment Under the Letter of Credit.

As a matter of law, Century cannot show that it relied on the bill of lading when the State Bank of India made payment on the letter of credit.  *See Banque Worms, New York Branch v. Banque Commerciale Privee*, 679 F. Supp. 1173, 1178 (S.D.N.Y. 1988) *aff'd*, 849 F.2d 787 (2d Cir. 1988) ("Actions concerning letters of credit are well suited to determination by motion for summary judgment because they normally present solely legal issues relating to an exchange of documents").  The State Bank of India was required to make payment to Certifibre on the letter of credit opened by Century, and it would have been required to do so even if the weight of the wood pulp listed on the bill of lading differed from the amount ordered by Century in the purchase order.  Therefore, Century cannot have relied on the bill of lading when the State Bank of India made payment.

The fundamental principle governing letters of credit is "the obligation of the issuing bank to honour a draft on a credit when it is accompanied by documents which appear on their face to be in accordance with the terms and conditions of the credit is independent of the performance of the underlying contract for which the credit was issued." *Alaska Textile Co., Inc. v. Chase*

*Manhattan Bank, N.A.*, 982 F.2d 813, 815 (2d Cir. 1992) (internal citations and quotations omitted). Indeed, "[i]t is the complete separation between the underlying commercial transaction and the letter of credit that gives the letter its utility in financing transactions." *Marino Ind. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982). According to the Second Circuit:

> The letter of credit takes on a life of its own as . . . all parties concerned deal in documents, not in goods [and/or] services. . . .
>
> Because the credit engagement is concerned only with documents, the terms and conditions of a letter of credit must be strictly adhered to. . . . This rule of strict compliance finds justification in the bank's role in the transaction being ministerial, and to require it to determine the substantiality of discrepancies would be inconsistent with its function. . . . If the documents do comply with the terms of the credit, the issuer's duty to pay is absolute, regardless of whether the buyer-account party complains that the goods are nonconforming. Issuers, moreover, must swiftly and carefully examine documents submitted for payment.

*Alaska Textile*, 982 F.2d at 815-816 (internal quotations and citations omitted).

Reference to the underlying contract does not incorporate its terms into the letter of credit. *See Venizelos, S. A. v. Chase Manhattan Bank*, 425 F.2d 461, 465 (2d Cir. 1970) ("Except insofar as its terms are expressly incorporated therein, a bank's contract with its customer for a letter of credit in favor of a beneficiary is separate and distinct from the charter party or other contract of sale between the customer and the seller"); *Jaffe v. Bank of Am., N.A.*, 395 F. App'x 583, 591 (11th Cir. 2010) (Plaintiff's argument based on the "language in the letter of credit stating 'per yacht building contract no. s125-1' that "arguably means" issuing bank had to certify compliance with contract "fails as a matter of law"); *Pringle-Associated Mortgage Corp. v. S. Nat'l Bank of Hattiesburg, Miss.*, 571 F.2d 871, 874 (5th Cir. 1978) ("General references to underlying agreements are surplusage and should not be considered in deciding whether the beneficiary has complied with the terms of the letter of credit."). There was no requirement in the letter of credit that the State Bank of India look at the weight stated in the purchase order and confirm it against

the bill of lading, and the references to the purchase order agreed to between Century and
Certifibre are not incorporated merely by reference to the purchase order.  Certifibre, as a matter
of law, could have drawn on the letter of credit even if the weights on the bill of lading had not
been stated as required by the purchase order.  Century therefore could not have relied on MSC's
statements in the bill of lading when the State Bank of India made payment on the letter of
credit.

### ii.  The Evidence Raises a Material Factual Dispute Regarding Century's Receipt of the Bill of Lading

Century's second argument is that it received the bill of lading and actually relied on its
representations in not seeking to enjoin Certifibre from drawing on the letter of credit.
Construing disputed facts in a light most favorable to the non-moving party, a material issue of
disputed fact remains regarding Century's reliance on the bill of lading.  Century opened the letter
of credit on November 30, 2009.  Certifibre drew on the letter of credit on January 13, 2010.
Century contends that it received and reviewed the bill of lading in late December 2009.
Century's support for that claim is not conclusive, as it is unclear whether the State Bank of India
actually forwarded to Century the bill of lading, or merely a list of the discrepancies in the
language in the bill of lading.  If Century did review the bill of lading, it would have seen the
weight discrepancy had the bill of lading been accurate, and Century could have moved to enjoin
payment on the letter of credit.

"There is . . . limited authority for enjoining payment under a letter of credit when the
documentation presented is fraudulent or there is fraud in the transaction.  This authority . . .
[permits] injunctive relief only in case of a clear showing of the active intentional fraud
complained of, not merely anticipated fraud." *KMW Int'l v. Chase Manhattan Bank, N.A.*, 606
F.2d 10, 16 (2d Cir. 1979); *see also Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d

245, 250 (2d Cir. 1999). Century may have been able to invoke this limited authority and enjoin payment. Reading the facts in the light most favorable to the non-moving party on each cross-motion, there is a material factual dispute as to whether or not Century did in fact see the bill of lading prior to the seller's drawing on the letter of credit.

### iii.  Century's Reliance Argument Premised Upon Non-Communication Fails

Century's final argument is that, because MSC failed to notify Century of the shortloading, Defendants should be estopped from presenting evidence to rebut Century's prima facie case that MSC received the full amount of cargo called for by the purchase order, which is based on the legal presumption that the bill of lading accurately stated the weight of the cargo. This argument fails as a matter of law. The party moving a court to apply estoppel must have relied on statements *in the bill of lading*. *Raphaely Int'l, Inc*, 764 F. Supp. at 50 ("the party urging estoppel must . . . have relied on representations contained in the bills of lading in making its purchase"). While MSC arguably should have notified Century of the discrepancy between the weight loaded by Certifibre and the weight listed in the bill of lading, the failure to notify does not trigger the protections of the estoppel doctrine.

## D.  Defendants' Negligence and Statutory Defenses under COGSA

Finally, Century argues that even if MSC is not estopped from proving that it received the containers substantially shortloaded, MSC's failure to tell Century about the defect prevents Defendants from asserting a statutory defense provided in COGSA. Defendants assert their defense under 46 U.S.C. § 1304(2)(q) ("Q clause"), which provides that the carrier will not be responsible for damages "arising without the actual fault and privity of the carrier and without the fault or neglect of the agents or servants of the carrier," but also provides that, "[T]he burden of proof shall be on the person claiming the benefit of this exception to show that neither the actual

fault or privity of the carrier nor the fault or neglect of the agents or servants of the carrier contributed to the loss or damage."

Defendants have carried their burden here under the Q Clause, presuming they are not estopped from presenting their defense; Defendants' negligence did not cause any damage to the goods, and the loss occurred without the "fault and privity of the carrier." Estoppel is the tool used to hold the carrier liable even if it could have otherwise defended itself against the prima facie case. The negligence requirement under the Q clause relates to negligence in shipping and care for the goods, and does not refer to liability premised upon shipping documents and communications between the parties. *See Berisford Metals*, 779 F.2d at 848 (distinguishing plaintiff's case as based upon estoppel and not defendant's negligence). Therefore, Defendants are entitled to assert the statutory defense under the Q clause.

**IV. Conclusion**

Because a material factual dispute exists as to the Plaintiffs' reliance on the bill of lading, summary judgment is DENIED as to both Plaintiffs and Defendants' motions.

The Clerk is directed to close the motions at docket numbers 32 and 36.

SO ORDERED.

Dated: September 17, 2013
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE